IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
NORTHERN DIVISION

No. 2:25-CV-15-RJ

JASMINE DENISE THORNTON,

Plaintiff/Claimant,

v.

O R D E R

FRANK J. BISIGNANO,
*Commissioner of Social Security*,

Defendant.

This matter is before the court on the parties' briefs filed pursuant to the Supplemental Rules for Social Security Actions. [DE-17, -19, -20]. Claimant Jasmine Thornton ("Claimant") filed this action pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3) seeking judicial review of the denial of her applications for a period of disability and Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI"). The time for further briefing has expired, and the pending motions are ripe for adjudication. Having carefully reviewed the administrative record and the briefs submitted by the parties, the decision of the Commissioner is reversed and the matter is remanded for further proceedings.

## I. STATEMENT OF THE CASE

Claimant filed applications for a period of disability and DIB and for SSI payments on May 3, 2022, alleging disability beginning November 12, 2021. (R. 17, 225–63). The claims were denied initially and upon reconsideration. (R. 72–103). A hearing before Administrative Law Judge ("ALJ") Williams was held on January 30, 2024, at which Claimant, represented by counsel, and a vocational expert ("VE") appeared and testified. (R. 34–71). On April 1, 2024, the ALJ

issued a decision denying Claimant's request for benefits, (R. 14–33), and the Appeals Council denied Claimant's request for review, (R. 1–6). Claimant then filed a complaint in this court seeking review of the now-final administrative decision.

## II. STANDARD OF REVIEW

The scope of judicial review of a final agency decision regarding disability benefits under the Social Security Act ("Act"), 42 U.S.C. § 301 *et seq.*, is limited to determining whether substantial evidence supports the Commissioner's factual findings and whether the decision was reached through the application of the correct legal standards. *See Coffman v. Bowen*, 829 F.2d 514, 517 (4th Cir. 1987). "The findings of the Commissioner . . . as to any fact, if supported by substantial evidence, shall be conclusive . . . ." 42 U.S.C. § 405(g). Substantial evidence is "evidence which a reasoning mind would accept as sufficient to support a particular conclusion." *Laws v. Celebrezze*, 368 F.2d 640, 642 (4th Cir. 1966). While substantial evidence is not a "large or considerable amount of evidence," *Pierce v. Underwood*, 487 U.S. 552, 565 (1988), it is "more than a mere scintilla . . . and somewhat less than a preponderance." *Laws*, 368 F.2d at 642. "In reviewing for substantial evidence, [the court should not] undertake to re-weigh conflicting evidence, make credibility determinations, or substitute [its] judgment for that of the [Commissioner]." *Mastro v. Apfel*, 270 F.3d 171, 176 (4th Cir. 2001) (quoting *Craig v. Chater*, 76 F.3d 585, 589 (4th Cir. 1996), *superseded by regulation on other grounds*, 20 C.F.R. § 416.927(d)(2)). Rather, in conducting the "substantial evidence" inquiry, the court's review is limited to whether the ALJ analyzed the relevant evidence and sufficiently explained his or her findings and rationale in crediting the evidence. *Sterling Smokeless Coal Co. v. Akers*, 131 F.3d 438, 439–40 (4th Cir. 1997).

2

### III. DISABILITY EVALUATION PROCESS

The disability determination is based on a five-step sequential evaluation process as set forth in 20 C.F.R. §§ 404.1520 and 416.920 under which the ALJ is to evaluate a claim:

> The claimant (1) must not be engaged in "substantial gainful activity," i.e., currently working; and (2) must have a "severe" impairment that (3) meets or exceeds [in severity] the "listings" of specified impairments, or is otherwise incapacitating to the extent that the claimant does not possess the residual functional capacity to (4) perform . . . past work or (5) any other work.

*Albright v. Comm'r of the SSA*, 174 F.3d 473, 475 n.2 (4th Cir. 1999). "If an applicant's claim fails at any step of the process, the ALJ need not advance to the subsequent steps." *Pass v. Chater*, 65 F.3d 1200, 1203 (4th Cir. 1995) (citation omitted). The burden of proof and production during the first four steps of the inquiry rests on the claimant. *Id.* At the fifth step, the burden shifts to the ALJ to show that other work exists in the national economy which the claimant can perform. *Id.*

When assessing the severity of mental impairments, the ALJ must do so in accordance with the "special technique" described in 20 C.F.R. §§ 404.1520a(b)–(c) and 416.920a(b)–(c). This regulatory scheme identifies four broad functional areas in which the ALJ rates the degree of functional limitation resulting from a claimant's mental impairment(s): understanding, remembering, or applying information; interacting with others; concentrating, persisting, or maintaining pace; and adapting or managing oneself. *Id.* §§ 404.1520a(c)(3), 416.920a(c)(3). The ALJ is required to incorporate into his written decision pertinent findings and conclusions based on the "special technique." *Id.* §§ 404.1520a(e)(3), 416.920a(e)(3).

### IV. ALJ'S FINDINGS

Applying the above-described sequential evaluation process, the ALJ found Claimant "not disabled" as defined in the Act. At step one, the ALJ found Claimant had not engaged in substantial gainful activity from the alleged onset date of November 12, 2021. (R. 19). Next, the ALJ

3

determined Claimant had severe impairments of lumbar spinal stenosis; obesity; sleep apnea; bilateral carpal tunnel syndrome; and inflammatory myopathy. (R. 20). The ALJ also found that Claimant's interstitial lung disease was a non-severe impairment within the meaning of the statute. *Id.* At step three, the ALJ concluded Claimant's impairments were not severe enough, either individually or in combination, to meet or medically equal one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. *Id.*

Prior to proceeding to step four, the ALJ assessed Claimant's residual functional capacity ("RFC"), finding Claimant had the ability to perform sedentary work[1] with the following limitations:

> can occasionally climb ramps/stairs; balance (as that is defined in the Dictionary of Occupational Titles (DOT)); stoop; kneel; crouch; and crawl. The claimant can never climb ladders, ropes, or scaffolds. She can frequently handle and finger items with both hands. The claimant can occasionally work at unprotected heights; around moving mechanical parts; or in dust, odors, fumes, and pulmonary irritants.

(R. 21–25). In making this assessment, the ALJ found Claimant's statements about her limitations were not entirely consistent with the medical evidence and other evidence in the record. (R. 25). At step four, the ALJ concluded Claimant has no past relevant work. *Id.* However, at step five, upon considering Claimant's age, education, work experience, and RFC, the ALJ determined there are jobs that exist in significant numbers in the national economy that she can perform. (R. 26).

## V. DISCUSSION

Claimant asserts that the ALJ committed two errors in formulating the RFC: first, that the opinion of Dr. Ikechukwu Mbonu ("Dr. Mbonu"), Claimant's rheumatologist, was not properly

---

[1] Sedentary work involves lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools. Although a sedentary job is defined as one which involves sitting, a certain amount of walking and standing is often necessary in carrying out job duties. Jobs are sedentary if walking and standing are required occasionally and other sedentary criteria are met. 20 C.F.R. §§ 404.1567(a), 416.967(a).

4

considered; and second, by failing to provide any explanation as to why Claimant's subjective complaints were deemed inconsistent with the evidence of record. Pl.'s Br. [DE-17] at 1, 7–17. The Commissioner contends that the ALJ properly evaluated the evidence and that substantial evidence supports the ALJ's evaluation of the opinion evidence from Dr. Mbonu and Claimant's subjective complaints. Def.'s Br. [DE-19] at 6–13.

At the hearing Claimant testified she is a high school graduate who resides with her parents. (R. 41–42). She never obtained a driver's license, currently due to the cost of re-taking the exam, and relies on her mother for transportation. (R. 42). Daily, she struggles with fatigue, muscle weakness, hand tremors, and widespread pain. (R. 44, 46–47). Her medications make her drowsy and due to the resulting fatigue, she has to lie down for three to four hours during a typical 8-hour day. (R. 47–48, 54). She claimed the pain and fatigue affect her concentration and memory. (R. 53).

Claimant asserted she cannot walk more than one hundred yards without stopping, due to pain in her back and legs. (R. 49–50). Similarly, she cannot stand in one spot for more than a few minutes without moving around and cannot sit for more than thirty minutes before needing to get up and move around, due to pain in her back and hips. (R. 50). In 2021, Claimant had a work-from-home job as a patient care advocate, but the shifts were twelve hours and being seated for so long resulted in pain in her back, hips, legs, and neck. (R. 52). She does not believe she would be able to do a full-time sit-down job of any kind. (R. 52–53).

Claimant started seeing a Rheumatologist, Dr. Mbonu, in October 2022 for back pain, lateral shoulder pain, and a rash. (R. 45). Her inflammatory issues result in pain and stinging in her shoulders, tenderness to the touch in her shoulders, as well as swelling in her hands. (R. 46). Claimant also testified she will sometimes have joint pain in her knees that make it difficult to get

5

up and down, and problems with her hip joints. *Id.* She also regularly sees pain management specialists for her widespread pain. (R. 45). Most mornings she suffers bilateral sciatica pain shooting down her legs. (R. 47). Claimant testified her back spasms on and off, and she will have burning, stinging, and sharp pain. (R. 45). When asked how often she has the back pain Claimant testified it would last "for a couple of months or so" before resolving. *Id.* She described her neck pain as spasms, with stiffness and tightness. (R. 46). Additionally, she sees a sleep specialist and a pulmonologist for problems with her breathing. *Id.*

Claimant has carpal tunnel, painful swelling, and, more recently, tremors in her hands. (R. 44, 50–51). While trying to do certain activities, such as squeezing toothpaste or cutting up food, her hands will tremor. (R. 51). She is unable to lift more than three to five pounds with a single hand. *Id.* She requires assistance for daily activities, but she is able to do some things like folding clothes or light dusting. (R. 53). She has had injections for carpal tunnel, which were unhelpful, and carpal tunnel release surgery on her right hand. (R. 59–60).

The RFC is the capacity an individual possesses despite the limitations caused by physical or mental impairments. 20 C.F.R. §§ 404.1545(a)(1), 416.945(a)(1); *see also* S.S.R. 96-8p, 1996 WL 374184, at *1 (July 2, 1996). The RFC is based on all relevant medical and other evidence in the record and may include a claimant's own description of limitations arising from alleged symptoms. 20 C.F.R. §§ 404.1545(a)(3), 416.945(a)(3); *see also* S.S.R. 96-8p, 1996 WL 374184, at *5. "[T]he residual functional capacity 'assessment must first identify the individual's functional limitations or restrictions and assess his or her work-related abilities on a function-by-function basis, including the functions' listed in the regulations." *Mascio v. Colvin*, 780 F.3d 632, 636 (4th Cir. 2015) (quoting S.S.R. 96-8p). The ALJ must provide "a narrative discussion describing how the evidence supports each conclusion, citing specific medical facts (e.g.,

6

laboratory findings) and nonmedical evidence (e.g., daily activities, observations)." *Id.* (quoting S.S.R. 96-8p); *see also Clifford v. Apfel*, 227 F.3d 863, 872 (7th Cir. 2000) (observing that the ALJ "must build an accurate and logical bridge from the evidence to his conclusion"). "Only after such a function-by-function analysis may an ALJ express RFC 'in terms of the exertional levels of work.'" *Monroe v. Colvin*, 826 F.3d 176, 179 (4th Cir. 2016) (quoting *Mascio*, 780 F.3d at 636). However, the Fourth Circuit has rejected "a per se rule requiring remand when the ALJ does not perform an explicit function-by-function analysis." *Mascio*, 780 F.3d at 636. Rather, the court explained that "[r]emand may be appropriate . . . where an ALJ fails to assess a claimant's capacity to perform relevant functions, despite contradictory evidence in the record, or where other inadequacies in the ALJ's analysis frustrate meaningful review." *Id.* (citation omitted).

### A. Dr. Mbonu's Medical Opinion

When assessing a claimant's RFC, the ALJ must consider the opinion evidence. 20 C.F.R. §§ 404.1545(a)(3), 416.945(a)(3). The applicable regulation provides that the ALJ "will not defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative medical finding(s), including those from [Claimant's] medical sources." 20 C.F.R. §§ 404.1520c(a), 416.920c(a). Instead, the ALJ must consider the persuasiveness of medical opinions using five factors: (1) supportability, meaning that "[t]he more relevant the objective medical evidence and supporting explanations presented by a medical source are to support his or her medical opinion(s) . . . the more persuasive the medical opinions or prior administrative medical finding(s) will be"; (2) consistency, meaning that the more consistent an opinion is with other evidence in the record, the more persuasive the medical opinion will be; (3) the medical source's relationship with the claimant, which considers the length of the treating relationship, frequency of examinations, purpose of the treating relationship, extent of the

7

treatment relationship, and whether the medical source examined the claimant; (4) specialization, meaning that "a medical source who has received advanced education and training to become a specialist may be more persuasive"; and (5) "other factors that tend to support or contradict a medical opinion." *Id.* §§ 404.1520c(c)(1)–(5), 416.920c(c)(1)–(5). The most important factors are supportability and consistency, and the decision must contain an explanation of how those factors were considered. *Id.* §§ 404.1520c(a) & (b)(2), 416.920c(a) & (b)(2). Notwithstanding, "there is no requirement that an ALJ use any 'magic words' in making findings regarding consistency and supportability." *Tyrun W. v. O'Malley*, No. 1:23CV719, 2024 WL 4349241, at *5 (M.D.N.C. Sept. 30, 2024) (quoting *Weidner v. Kijakazi*, No. 20-1250-MN, 2022 WL 610702, at *12 (D. Del. Feb. 1, 2022) (finding the fact that the ALJ did not use "consistency" or "supportability" is not sufficient to remand where the "ALJ plainly considered the consistency of the medical opinions with the evidence of record")). "Thus, the ALJ's failure to specify which factor, i.e., supportability, consistency, or otherwise, was eroded by contrary evidence is inapposite, so long as he (1) analyzed the relevant evidence when considering the persuasiveness of the medical opinion and (2) made his analysis of that evidence clear enough for the court to meaningfully review it." *Id.*

In connection with Claimant's disability application, her attorney sent a medical evaluation form to her rheumatologist, Dr. Mbonu, which he completed January 12, 2024, shortly before the hearing. (R. 1841–51). The form is a questionnaire asking about Claimant's conditions and how they would affect her ability to work. (R. 1842–44). On the form Dr. Mbonu indicated he began treating Claimant in October 2022. (R. 1842). He summarized Claimant's impairments as "widespread body pain, shortness of breath[,] and weakness" supported by his clinical observations and test results showing "skin rash, swollen joints, positive SSA antibodies[, and]

8

positive MDA 5 antibodies." *Id.* Dr. Mbonu further indicated Claimant's conditions caused pain that would affect her ability to focus and stay on task in a work setting for sixty to seventy percent of the day. *Id.* In the physical capacities assessment section of the form, Dr. Mbonu checked "no" in response to the question "is your patient able to work fulltime (i.e. 7–8 hours per day five days per week, or the equivalent, on a consistent scheduled basis) at any level of exertion?". (R. 1843). Dr. Mbonu indicated Claimant could not sit for more than two hours during a workday; could stand or walk for less than an hour; and that she could occasionally lift up to five pounds, but not anything heavier. *Id.*

The ALJ summarized Dr. Mbonu's questionnaire answers in the determination before finding his medical opinion unpersuasive for the following reasons:

> The treatment records from this provider do not support the significant limitations noted in this check box form. For example, four months prior to this opinion, the claimant presented to this provider with stable symptoms, no significant exertional dyspnea or inflammatory myopathy symptoms. (Exhibit 18F/17-18). Dr. Mbonu recommended that the claimant "start" physical therapy for her right shoulder, but also noted that the claimant is "still able to do most things." (Exhibit 18F/18).

(R. 25). Claimant contends the ALJ erred in finding Dr. Mbonu's opinion to be unpersuasive because he (1) failed to evaluate the consistency factor, and (2) provided a flawed evaluation of the supportability factor because it was based on the form of the medical opinion and a contradictory treatment note which was "not indicative of Dr. Mbonu's treatment record as a whole." Pl.'s Br. [DE-17] at 8–10, 13.

First, although the ALJ described Dr. Mbonu's opinion as a check-box form, the ALJ does not assert that was his sole reason for finding the opinion unpersuasive. (R. 25). "An ALJ is entitled to give a form opinion less weight than a narrative opinion." *Court v. Saul*, No. 4:18-CV-201-RJ, 2019 WL 4415145, at *5 (E.D.N.C. Sept. 16, 2019); *see also Schaller v. Colvin*, No. 5:13-

9

CV-334-D, 2014 WL 4537184, at *16 (E.D.N.C. Sept. 11, 2014) ("[S]ince the opinion is in the form of a questionnaire, the ALJ was entitled to assign it less weight than a fully explanatory and narrative opinion because such form opinions do not offer adequate explanation of their findings."); *Whitehead v. Astrue*, No. 2:10-CV-35-BO, 2011 WL 2036694, at *9–10 (E.D.N.C. May 24, 2011) (determining that a check-box form completed by a treating physician was not entitled to controlling weight where it was inconsistent with the physician's own treatment notes and gave no explanation or reasons for the findings). Although the format of the opinion alone is an insufficient reason to discount it, the ALJ does not do so solely because of the format of the opinion. *See Parker v. Saul*, No. 7:20-CV-73-BO, 2021 WL 2546718, at *3 (E.D.N.C. June 21, 2021) (finding the ALJ's failure to give a medical opinion great weight because it was a "check-box form without any rationale" to be an insufficient reason.); *Thomas v. Berryhill*, No. 4:16-CV-15-D, 2017 WL 1047253, at *8 (E.D.N.C. Feb. 15, 2017) ("Dawson's review is contained on a form with check boxes, but Dawson also provided additional notations regarding Thomas's treatment and status. Moreover, check-boxes forms are regularly used by both providers and consultants in the disability determination process. Thus, the format alone is not a reasonable basis to dismiss Dawson's assessment." (citations omitted)), *adopted by* 2017 WL 1049472 (E.D.N.C. Mar. 17, 2017).

Second, the ALJ asserts Dr. Mbonu's opinion is unpersuasive primarily because the significant limitations described are unsupported by his own treatment notes. (R. 25). Although the ALJ uses a single treatment note as an example of why Dr. Mbonu's opinion was unsupported, there are several references to Claimant's other encounters with Dr. Mbonu earlier in the opinion that give further insight into their treatment relationship. Claimant first saw Dr. Mbonu on October 18, 2022, reporting "joint pain in her hands, knees, wrist, elbows" and swelling in her elbows, hands, and ankles. (R. 23, 795). She was referred to him by her hand surgeon, who was concerned

10

she may have inflammatory arthritis. (R. 797). Dr. Mbonu noted his concerns over the possibility of lupus, ordered a number of tests, and started her on prednisone. (R. 797–98). On November 1, 2022, Claimant had a follow-up visit with Dr. Mbonu where he noted her symptoms were improving but she still had redness at her fingertips and toes. (R. 23, 792). Unable to give a definitive diagnosis at the time, Dr. Mbonu had Claimant start to slowly reduce her dose of prednisone and asked her to return in six weeks to reassess her symptoms. (R. 793). Claimant had a follow-up appointment with Dr. Mbonu on December 13, 2022, not recounted by the ALJ in the opinion, where he noted her symptoms showed no change. (R. 772). Dr. Mbonu further noted the exam showed no indication of inflammatory arthritis and Claimant said the prednisone he had prescribed was not helping her at all as she still had joint pains. (R. 773). On December 23, 2022, Claimant's mother wrote to Dr. Mbonu asking for a referral to Neurology to rule out MS. (R. 767). On January 6, 2023, Dr. Mbonu's office faxed a referral to Sentara Neurology and called the patient to provide information about the referral. (R. 765). Claimant next saw Dr. Mbonu on May 16, 2023, with no change in her symptoms. (R. 993).

At their next visit, on June 27, 2023, to go over her most recent lab results, Claimant presented with worsening symptoms. (R. 975–76, 986–97). Claimant complained of shoulder pain, difficulty gripping things, and pain bending her fingers. (R. 976). The ALJ noted it was at this appointment that Claimant was diagnosed with inflammatory myopathy, which the ALJ found to be a medically determinable severe condition. (R. 24). Dr. Mbonu once again started her on medication and scheduled a six-week follow-up. (R. 976). The ALJ did not include a reference to the notes from Claimant's August 8, 2023 visit with Dr. Mbonu, where she complained of her pain and symptoms worsening and requested an MRI for her right shoulder. (R. 1797). Dr. Mbonu continued the same dose of prednisone and referred her for an MRI. *Id.* At the September 19,

11

2023 appointment Dr. Mbonu noted Claimant's symptoms were stable; that he recommended she start physical therapy for her right shoulder; and that they discussed glucocorticoid induced osteoporosis. (R. 1783). The treatment plan indicates Dr. Mbonu reduced her prednisone and referred her for a bone density test and physical therapy. (R. 1784).

Claimant argues that the ALJ improperly used Dr. Mbonu's September 2023 note, that Claimant's symptoms were "stable," to mean she was capable of working full-time. Pl.'s Br. [DE-17] at 12. Claimant asserts the ALJ's reliance on this single note to find Dr. Mbonu's opinion unpersuasive was erroneous because symptoms can be both stable and disabling. *See Cohen v. Colvin*, No. CIV.A. 2:14-1775-RMG, 2015 WL 4423767, at *6 (D.S.C. July 17, 2015) (citing *Hemminger v. Astrue*, 590 F.Supp.2d 1073, 1081 (W.D. Wis. 2008) ("[T]he fact that other physicians who examined or treated plaintiff . . . used the word 'stable' to describe her fibromyalgia says nothing about whether plaintiff can work: a person can have a condition that is both 'stable' and disabling at the same time." (citing *Bauer v. Astrue*, 532 F.3d 606, 609 (7th Cir. 2008)); *Moreles v. Apfel*, 225 F.3d 310, 319 (3d Cir. 2000) ("Dr. Erro's observations that Morales is 'stable and well controlled with medication' during treatment does not support the medical conclusion that Morales can return to work. Dr. Erro, despite his notation, opined that Morales's mental impairment rendered him markedly limited in a number of relevant work-related activities.")).

The Commissioner reiterates the standard that the ALJ is not required to us any "magic words" but instead must comply with the "'reasonable articulation standard' that enables 'a reviewing court to trace the path of an adjudicator's reasoning, and will not impede a reviewer's ability to review a determination or decision, or a court's ability to review [the ALJ's] final decision.'" Def.'s Br. [DE-19] at 8 (quoting 82 Fed. Reg. 5844-01 at 5858). The Commissioner goes on to argue the ALJ sufficiently explained his reasoning for finding Dr. Mbonu's opinion

12

unpersuasive, and even cited a treatment note that supported that finding. *Id.*

In *Manglik v. Bisignano*, the claimant's treating physician, Dr. Chandi, similarly completed a medical evaluation form. No. 2:24-CV-25-RJ, 2025 WL 1555366, at *10 (E.D.N.C. June 2, 2025). Dr. Chandi indicated the claimant had knee pain that "would require extra rest breaks of more than one hour total during the workday and that limited him to three hours of standing or walking in a workday." *Id.* The ALJ similarly summarized Dr. Chandi's opinion but ultimately found it to be unpersuasive. *Id.* The claimant argued the ALJ failed to discuss the supportability and consistency of Dr. Chandi's opinion, which required remand. *Id.* While the court agreed that the ALJ's explanation of why it found Dr. Chandi's opinion unpersuasive was insufficient, the rest of the RFC discussion plus the substantial evidence in the record rendered the error harmless. *Id.* (citing *Radford v. Colvin*, 734 F.3d 288, 295 (4th Cir. 2013) ("The record should include a discussion of which evidence the ALJ found credible and why, and specific application of the pertinent legal requirements to the record evidence.") (citing *Hines v. Bowen*, 872 F.2d 56, 59 (4th Cir. 1989); *Boulden v. O'Malley*, No. 24-1414, 2025 WL 48337, at *4 (4th Cir. Jan. 8, 2025) (rejecting argument that ALJ's supportability and consistency analysis was insufficient because he cited only one exhibit out of a 3,600-page record, where the court's review of the record indicated normal examinations in treatment notes, and "the ALJ did cite significant other record evidence elsewhere in his opinion, making clear he reviewed the record closely"); *Webb v. Kijakazi*, No. 1:20-CV-714, 2021 WL 5206498, at *13 (M.D.N.C. Nov. 9, 2021) (finding any error by the ALJ in failing to expressly discuss consistency of medical opinion was harmless where the plaintiff failed to show that "remand for an express discussion of the consistency of Dr. Bolz's opinion with the remainder of the record would lead to a favorable outcome in his case."), *report and recommendation adopted*, 2021 WL 5834407 (M.D.N.C. Dec. 9, 2021)). Here, however, the ALJ's

13

analysis is insufficient, and the court cannot find that the error is harmless.

In *Manglik*, the claimant testified at his hearing the "knee pain was something that he could handle" and he was not taking medication for it. 2025 WL 1555366, at \*11. Here, in stark contrast, Claimant testified she experiences fatigue, muscle weakness, and pain daily. (R. 46–47). Whether the ALJ considered Claimant's testimony is not entirely clear because there is no reference to the hearing testimony in the RFC determination. Furthermore, the treatment records indicate Claimant continued to see her other specialists for treatment after her September 19, 2023 appointment with Dr. Mbonu. For example, on September 27, 2023, Claimant went to her pain management specialist reporting frequent neck and back pain, (R. 1579), and on October 9, 2023, Claimant had carpal tunnel release surgery, (R. 1086, 1101, 1158).

In *Manglik*, Dr. Chandi's treatment notes indicated that although the claimant did see him for knee pain several times from July 2021 to July 2022, he did not mention knee pain in any subsequent treatment notes in October 2022, December 2022, and March 2023, which the court used to infer his knee pain had resolved. *Id.* at \*11. Here, Claimant's September 19, 2023 appointment with Dr. Mbonu was her most recent visit with him in the record evidence. (R. 1783–84). While Dr. Mbonu noted her symptoms were stable at that time, he also notes that Claimant reported she had right shoulder pain and felt her upper arms were weak but she could "still do most things." (R. 1784). "An ALJ has the obligation to consider all relevant medical evidence and cannot simply cherrypick facts that support a finding of nondisability while ignoring evidence that points to a disability finding." *Lewis v. Berryhill*, 858 F.3d 858, 869 (4th Cir. 2017) (quoting *Denton v. Astrue*, 596 F.3d 419, 425 (7th Cir. 2010)). Reviewing the treatment record as a whole, Claimant saw Dr. Mbonu a total of seven times from October 2022 to September 2023. Although Claimant did show some improvement in her symptoms on November 1, 2022, those

14

improvements were noted as being able to squeeze things and open bottles. (R. 792). The rest of the treatment notes up until September 19, 2023 show no change or worsening symptoms. (R. 772–73). It is unclear to the court how Dr. Mbonu's note that Claimant reported her arms were weak but she could "do most things" would indicate his January opinion was plainly unsupported. (R. 1784). In Dr. Mbonu's other notes where he indicates Claimant's capabilities he notes she can squeeze, open a bottle, and brush her hair, none of which would be contradicted by his January opinion.

As both parties point out in their briefs, the consistency factor the ALJ must consider asks whether Dr. Mbonu's opinion is consistent with the other record evidence, medical and non-medical. Pl.'s Br. [DE-17] at 9–10; Def.'s Br. [DE-19] at 7. Here, the ALJ found Dr. Mbonu's opinion to be unpersuasive because his own treatment records did not support the significant limitations noted. (R. 25). This goes to the supportability factor, not the consistency factor, which asks whether the opinion is consistent with the record as a whole. *See* 20 C.F.R. §§ 404.1527(c)(4), 416.927(c)(4); *Oakes v. Kijakazi*, 70 F.4th 207, 212 (4th Cir. 2023) ("Supportability is the degree to which a provider supports their opinion with relevant, objective medical evidence and explanation, and consistency is the degree to which a provider's opinion is consistent with the evidence of other medical and non-medical sources in the record."). There is no indication that the ALJ compared Dr. Mbonu's opinion to the rest of the record evidence to determine if it was consistent.

The Commissioner argues the ALJ met this requirement, as demonstrated by the ALJ's statement that the RFC was determined "after careful consideration of the entire record." Def.'s Br. [DE-19] at 8 (quoting R. 21). Although the ALJ is not required to use any magic words when articulating the reasons for finding a medical opinion is inconsistent with the record evidence, it

15

needs to be apparent to the court how the ALJ arrived at such a conclusion. *Mascio*, 780 F.3d 636–37; *see Monroe*, 826 F.3d at 189 (the ALJ must "build an accurate and logical bridge from the evidence to his conclusion." (citing *Clifford v. Apfel*, 227 F.3d 863, 872 (7th Cir. 2000)). The Commissioner attempts to build that logical bridge, asserting the ALJ "considered [Claimant's] reports of pain, and contrasted that with other evidence at odds with Dr. Mbonu's opinion." Def.'s Br. [DE-19] at 8. To support this assertion the Commissioner references her November 1, 2022 appointment with Dr. Mbonu, where her symptoms briefly improved because she could squeeze things and open bottles. *Id.* (citing R. 23, 792). The ALJ does note that visit in the decision, but then omits any reference to Claimant's December 13, 2022, May 2023, or August 2023 visits with Dr. Mbonu, where her symptoms either showed no change or worsened. Furthermore, the court may not rely on the Commissioner's post-hoc rationalizations for the ALJ's determination. *See Prosser v. Bisignano*, No. 4:24-CV-171-D, 2025 WL 3559001, at \*4 (E.D.N.C. Oct. 24, 2025), *report and recommendation adopted*, No. 4:24-CV-171-D, 2025 WL 3555083 (E.D.N.C. Dec. 11, 2025) ("[t]his court may only evaluate the ALJ's decision based on the reasons stated stated in the decision); *Arakas v. Comm'r, Soc. Sec. Admin.*, 983 F.3d 83, 109 (4th Cir. 2020) (rejecting as post-hoc justification the Commissioner's attempt to reframe the ALJ's lay view interpretation of an MRI as consistent with the record) (citing *Radford v. Colvin*, 734 F.3d 288, 294 (4th Cir. 2013)); *see also Burlington Truck Lines, Inc. v. United States*, 371 U.S. 156, 169 (1962) (clarifying that "courts may not accept appellate counsel's post hoc rationalizations for agency action"); *Allen v. Barnhart*, 357 F.3d 1140, 1142 (10th Cir. 2004) ("[a]ffirming this post hoc effort to salvage the ALJ's decision would require us to overstep our institutional role and usurp essential functions committed in the first instance to the administrative process").

Additionally, there is evidence in the record that supports Dr. Mbonu's opinion which the

16

ALJ did not assess, including Claimant's hearing testimony. At the hearing Claimant testified she suffered from back, leg, and hip pain made worse by walking, standing, or sitting, (R. 49–50); the pain plus the fatigue caused by her medications affects her concentration and memory, (R. 53); she had previously worked a full-time remote job, but being seated for so long caused her pain in her back, hips, legs, and neck, (R.52). The record further indicates Claimant's other physicians' notes support Dr. Mbonu's opinion. For example, the notes from Claimant's September 27, 2023 appointment with her pain management specialist indicates that her provider started her on the medications Cymbalta and Relafen for pain, (R. 1578); she reported her pain was worse with "lifting, bending, prolonged standing, walking, neck positioning, repetitive motions, [and] reaching," (R. 1579); her provider had her complete an Oswestry Disability Index questionnaire where she indicated she could only lift light weights, walk up to half a mile, could not sit or stand for more than ten minutes, and could look after herself normally but it was very painful, (R. 1584).

Ultimately the ALJ's reasoning for finding Dr. Mbonu's opinion unpersuasive is legally insufficient and not supported by substantial evidence, which frustrates meaningful review. *See Arakas*, 983 F.3d at 106 ("The ALJ's cursory explanation fell far short of his obligation to provide 'a narrative discussion [of] how the evidence support[ed] [his] conclusion,' and '[a]s such, the analysis is incomplete and precludes meaningful review.'" (quoting *Monroe*, 826 F.3d at 190–91)).

### B. Claimant's Subjective Complaints

Federal regulations 20 C.F.R. §§ 404.1529(a) and 416.929(a) provide the authoritative standard for the evaluation of subjective complaints of pain and symptomology, whereby "the determination of whether a person is disabled by pain or other symptoms is a two-step process." *Craig*, 76 F.3d at 593–94. First, the ALJ must objectively determine whether the claimant has medically documented impairments that could cause his or her alleged symptoms. S.S.R. 16-3p,

17

2016 WL 1119029, at *3 (Mar. 16, 2016); *Hines v. Barnhart*, 453 F.3d 559, 564 (4th Cir. 2006). If the ALJ makes that determination, he must then evaluate "the intensity and persistence of the claimant's pain[,] and the extent to which it affects her ability to work," *Craig*, 76 F.3d at 595, and whether the claimant's statements are supported by the objective medical record. S.S.R. 16-3p, 2016 WL 1119029, at *4; *Hines*, 453 F.3d at 564–65.

Objective medical evidence may not capture the full extent of a claimant's symptoms, so where the objective medical evidence and subjective complaints are at odds, the ALJ should consider all factors concerning the "intensity, persistence and limiting effects" of the claimant's symptoms. S.S.R. 16-3p, 2016 WL 1119029, at *7; 20 C.F.R. § 404.1529(c)(3) (showing a complete list of factors). The ALJ may not discredit a claimant solely because his or her subjective complaints are not supported by objective medical evidence, *Craig*, 76 F.3d at 595–96, but neither is the ALJ required to accept the claimant's statements at face value; rather, the ALJ must "evaluate whether the statements are consistent with objective medical evidence and the other evidence." S.S.R. 16-3p, 2016 WL 1119029, at *6; *see Ladda v. Berryhill*, 749 F. App'x 166, 171 (4th Cir. 2018) ("The ALJ cannot 'reject a claimant's statements about the intensity and persistence of . . . pain or other symptoms' or about the effect of those symptoms on a claimant's ability to work 'solely because the available objective medical evidence does not substantiate them.'") (quoting 20 C.F.R. § 404.1529(c)(2)); *Taylor v. Astrue*, No. 5:10-CV-263-FL, 2011 WL 1599679, at *4–8 (E.D.N.C. Mar. 23, 2011), *adopted by* 2011 WL 1599667 (E.D.N.C. Apr. 26, 2011). As the Fourth Circuit held in *Shelley C. v. Comm'r of the SSA*, subjective statements from claimants "should be treated as evidence *substantiating* the claimant's impairment." 61 F.4th 341, 360 (4th Cir. 2023) (citing *Arakas*, 983 F.3d at 97–98).

At the first step, the ALJ determined that "[C]laimant's medically determinable

18

impairments could reasonably be expected to cause the alleged symptoms." (R. 25). However, at the second step, the ALJ found "[C]laimant's statements concerning the intensity, persistence[,] and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record for the reasons explained in this decision." *Id.* The ALJ omitted any such explanation from the decision, leaving the court to guess why the ALJ found Claimant's subjective complaints inconsistent with the record. See *Julie J. v. O'Malley*, No. 5:23-CV-00007, 2024 WL 890001, at *14 (W.D. Va. Mar. 1, 2024) ("the ALJ must give specific reasons, supported by 'references to the evidence,' for the weight assigned to the claimant's statements." (citing *Edwards v. Colvin*, No. 4:13cv1, 2013 WL 5720337, at *6 (W.D. Va. Oct. 21, 2013) (citing SSR 96-7p, 1996 WL 374186, at *2, *4–5 (July 2, 1996)).

The ALJ also omitted from the decision any summary of Claimant's hearing testimony but did include references to several of Claimant's complaints to her physicians and the subsequent exam findings; which, at times, were unremarkable. (R. 21–24). It would be legal error if the ALJ dismissed Claimant's subjective complaints entirely because he believed "that they were not corroborated by the record's medical evidence." *Shelley C.*, 61 F.4th at 360 (4th Cir. 2023) ("The Fourth Circuit has long held that 'while there must be objective medical evidence of some condition that could reasonably produce the pain, there need not be objective evidence of the pain itself or its intensity.'" (quoting *Walker v. Bowen*, 889 F.2d 47, 49 (4th Cir. 1989))). The Commissioner asserts the ALJ did exactly that, highlighting instances where Claimant's exam results showed "only scattered slight abnormalities," (R. 22, 507), or are otherwise described as normal, (R. 23–24, 740–42), as adequate explanation as to why the ALJ discounted her subjective statements. Def.'s Br. [DE-19] at 11–12.

Again, the ALJ's lack of a narrative explanation frustrates meaningful review. Much of the

19

record evidence supports Claimant's subjective statements, including her consistent reports of pain and limitations to her physicians and her continued search for diagnoses and treatment to relieve her symptoms. *See Tyndall v. Kijakazi*, No. 5:22-CV-403-RJ, 2023 WL 7149493, at *5 (E.D.N.C. Oct. 31, 2023) ("The ALJ is required to consider a claimant's statements about her symptoms, 20 C.F.R. § 404.1529(a), S.S.R. 16-3p, and the ALJ's failure to explain how he evaluated Claimant's statements hampers the court's ability to conduct a meaningful review."). The RFC contains a summary of a few of Claimant's extensive treatment records but even read as a whole they do not provide a narrative discussion explaining the ALJ's conclusion. *See Mascio*, 780 F.3d at 636. Therefore, the matter is remanded for further proceedings.

## VI. CONCLUSION

For the reasons stated above, the final decision of the Commissioner is reversed and the matter is remanded for further proceedings pursuant to sentence four of 42 U.S.C. § 405(g).

So ordered, this the 23rd day of March, 2026.

Robert B. Jones, Jr.
United States Magistrate Judge

20